IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00138-WYD-BNB

SIREINO JOE MARTINEZ,

Plaintiff,

v.

JOE ORTIZ, Executive Director, Colorado Department of Corrections,
GARY GOLDER, Warden, Sterling Correctional Facility,
MARY COX, (Major) Religious Programs Coordinator, Sterling Correctional Facility,
FRANK SIPES, Lieutenant (security officer), Sterling Correctional Facility,
MARY DISCHNER, Lieutenant (Security Officer), Sterling Correctional Facility,
SUE GRISENTI, (CIPS), Colorado Inmate Phone System Coordinator, and
CONNIE WILLYARD, (CIPS) Colorado Inmate Phone System Operator,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the plaintiff's **Motion for Temporary Restraining Order and a Preliminary Injunction** (the "Motion"), filed July 13, 2005. For the following reasons, I respectfully RECOMMEND that the Motion be DENIED.

## I.  BACKGROUND

The plaintiff currently is incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility. He claims that the DOC is violating his rights with regard to Native American sweat lodge ceremonies. He seeks an injunction "requiring the defendants to 'STOP' all performances and participation of Sweatlodge/Pipe ceremonies in all correctional facilities under the control and supervision of the Executive Director . . . per the letter of Chief Arvol Looking Horse 'Protection of Ceremonies' of 6-25-03, until the final

disposition of the case and until a qualified spiritual leader or medicine man of the Ogalala Lakota Nation can be consulted. . . ." *Motion*, p. 5.

## II.   THE LAW

The plaintiff seeks both a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) and a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).  Where, as here, the opposing party has notice, "the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction."  Emmis Communications Corp. v. Media Strategies, Inc., 2001 WL 111229, *2 (D.Colo. Jan. 23, 2001).

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established.  Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on the movant to establish his right to the relief requested.  Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975).  To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980).  The plaintiff's right to relief must be clear and unequivocal.  Penn, 528 F.2d at 1185.

The following kinds of preliminary injunctions are disfavored:  (1) those that disturb the status quo; (2) those that are mandatory as opposed to prohibitory; and (3) those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096 1098-99 (10th Cir. 1991).  "[A]ny preliminary

injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004). The plaintiff seeks an injunction that would disturb the status quo.[1] Therefore, he "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms." Id. at 976.

## III.  ANALYSIS

### A.  Likelihood of Success on the Merits

The plaintiff bears the burden of establishing that he has a *substantial* likelihood of succeeding on the merits. To satisfy this burden, the plaintiff relies on a single, conclusory statement that he "has a great likelihood of success on the merits." *Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction* ("Memorandum"), p. 8. Although the Memorandum cites numerous cases, it fails to discuss how that law applies to the facts of his case.[2] Consequently, the plaintiff has failed to establish that he has a substantial likelihood of succeeding on the merits.

---

[1]Injunctions that disturb the status quo alter the parties existing relationship. SCFC, 936 F.2d at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." Id. (emphasis in original).

[2]The plaintiff asserts that he need only show "the irreparable minimum of some chance of success on the merits," id. at p. 9 (internal quotations omitted). The law of this circuit requires otherwise. Lundgrin, 619 F.2d at 63; Penn, 528 F.2d at 1185; O Centro, 389 F.3d at 975.

## B.   Irreparable Injury

The plaintiff states that his First Amendment right to freedom of religion is being violated and that, "[a]s a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm." *Memorandum*, p. 6.  It is true that a presumption of irreparable injury exists where constitutional rights are infringed.  Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).  See also Rankin, 483 U.S. at 383-84 (discharged employee may be entitled to reinstatement if discharged for exercise of constitutional right to freedom of expression).  The plaintiff, however, has failed to establish a likelihood of success on his constitutional claim.  As a result, he is not entitled to a presumption of irreparable injury.

The plaintiff further states that "he has been denied ceremonial items and materials, freedom to worship, and protection of ceremonies." *Memorandum*, p. 4.  He claims that "[i]f he does not receive the qualified spiritual leader and medicine man to protect these ceremonies in prison, the 'Lakota Traditional Way of Life' will be continuosly [sic] disrespected." *Memorandum*, p. 7.  The plaintiff also claims:

> I was denied the protection of ceremonies, access to ceremonial items and materials, access of time to worship, access to spiritual leaders and medicine men, experienced staff to monitor the Sweatlodge/pipe ceremonies, DOC employee (American Indian) to protect and oversee Native American ceremonies in prison, unreasonable strip searches, not enforcing that non-native offenders authenticate their "ETHNICITY" as Native Americans in order to

4

participate, perform ceremonies, and carry the Canupa (sacred pipe) and inforcement [sic] of the Pipe Ceremony be restricted to offenders designated as American Indian and that offenders not designated as American Indian be restricted access to the sweatlodge area (refer to Chief Arvol Looking Horse's Letter "Protection of Ceremonies," dated 6-25-03).

As of January 24, 2004, I was denied access to the Sweatlodge area for a pipe ceremony, because of the fact that the Administrative Regulation 800-01 prohibits less than 5 participants access to the Sweatlodge area to worship, enforced Lt. Mary Dischner.

DOC is in violation of my rights by allowing non-natives that are convicted of child molesting, sexual assualts [sic] blood on their hands, to carry the Sacred Pipes, perform ceremonies in prison, these offenders are not Lakota, Nakota, Dakota, and are not adopted by the Tribe and even worst [sic], "do not" know how to perform our ceremonies according to our elders, these are violations that are continous [sic] and have to stop according to the letter put out to all Nations by the Ogalala Lakota Chief Arvol Looking Horse, "Protection of Ceremonies," dated 6-25-03.  (See attached.)

These non-natives are continously [sic] violating the tobacco rule, they put the Sweatlodge tarps on the structure before the fire is even started and crawl inside and roll cigarettes to smoke, which is not part of any Lakota Ceremony, these are Lakota built sweatlodges, pipes, ceremonies and sacred songs, these are violations per Chief Arvol Looking Horse.

Other Native American Tribe participants, such as Navajos, Apaches are performing other types of ceremonies in these Lakota built Sweatlodges and this is a very "serious" violation to the Lakota Nation and our ceremonies.

I am suffering "irreparable harm" in the form of continued physical and mental suffering and increasing risk that my freedom to worship under the First Amendment, 42 U.S.C. § 2000bb; 42 U.S.C. § 2000cc and "Protection of Ceremonies" per Chief Arvol Looking Horse, will continue to be violated.

*Declaration in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* (the "Declaration), pp. 2-4, ¶¶ 2-7.

"Determining whether irreparable harm exists can be a difficult and close question." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1263 (10th Cir. 2004). "[T]he concept of irreparable harm does not readily lend itself to definition, nor is it an easy burden to fulfill.  In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial." Id. (internal quotations and citations omitted).

The plaintiff's allegations lack any significant detail concerning his claims that he was subjected to unreasonable strip searches, denied access to ceremonial items, denied access to spiritual leaders and medicine men, and denied experienced staff to monitor the sweat lodge/pipe ceremonies.  The plaintiff alleges that he was denied access to the sweat lodge area for a pipe ceremony on only one occasion--January 24, 2004.

The plaintiff also claims that his freedom to worship is being violated by allowing non-Lakota, Nakota, and Dakota inmates in the sweat lodge.  Declaration, p.3.  In support, he relies on a document entitled "Response to 'Protection of Ceremonies,'" which purports to be "the long awaited response concerning the 'Protection of Ceremonies' statement from the Keeper of the Sacred White Buffalo Calf Pipe, Arvol Looking Horse . . . ." Id., attachment, at p.1.  The plaintiff claims that Chief Arvol Looking Horse's statement constitutes "the Laws pertaining to Native American Ceremonies and the Protection of Ceremonies," and that the DOC is required to follow that law. *Memorandum*, p.8.

6

The statement attributed to Chief Arvol Looking Horse provides:

> I cannot dictate to the Spiritual Leaders who they allow to attend and support ceremonies, who they feel they need to doctor or where they travel. This was only to remind that the white brothers and sisters, they can still attend and pray with us at a ceremony, if the Spiritual Leader allows this.

*Declaration*, attachment, at p.3.

The plaintiff points to the reference to "Spiritual Leaders," and requests that all sweat lodge ceremonies be stopped until a qualified spiritual leader can be consulted. He claims that the DOC's failure to follow Chief Arvol Looking Horse's statement is causing him to suffer irreparable harm "in the form of continued physical and mental suffering." *Declaration*, p.4. Chief Arvol Looking Horse's statement indicates that it is possible that a spiritual leader could authorize non-Lakota, Nakota, and Dakota inmates to participate in sweat lodge ceremonies, however. *Declaration*, attachment, at p.3. Therefore, the DOC's practice in allowing non-Lakota, Nakota, and Dakota inmates to use the sweat lodge at Sterling Correctional Facility cannot form the basis of a "certain and great" injury.

The plaintiff seeks an injunction applicable to "all correctional facilities." His allegations, which largely are conclusory, concern incidents at the Sterling Correctional Facility only. There is no evidence concerning the operation of sweat lodges at other DOC facilities.

The plaintiff has failed to establish that he will suffer irreparable harm if the injunctive relief he seeks is not granted.

## C. Threatened Injury to Plaintiff Versus Possible Damage to Defendants

The plaintiff states that he is experiencing, and will continue to experience, enormous suffering "if he permanently loses his right to properly practice his Lakota Traditional Way of Life

7

and Protection of Ceremonies." *Memorandum*, p. 8.  The plaintiff seeks wide-ranging relief that would require the DOC to deny to all non-Lakota, Nakota, and Dakota inmates access to the sweat lodge until this case is decided.  The relief sought would deny numerous inmates the right to practice their chosen faith, which may violate their rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*.  Consequently, the potential harm to the DOC and other inmates far outweighs any injury articulated by the plaintiff.

### D.   Public Interest

The plaintiff states that "the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law." *Memorandum*, p. 10.  The plaintiff has failed to establish, however, a substantial likelihood that he will prevail on the merits.

Congress, when it enacted RLUIPA, made clear that the public interest is served by allowing inmates the right to practice their chosen faith.  The Act provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest".  42 U.S.C. § 2000cc-1.  It would be adverse to the public interest to deny all non-Lakota, Nakota, and Dakota inmates access to sweat lodges pending resolution of the plaintiff's case.

## IV.   CONCLUSION

I respectfully RECOMMEND that the plaintiff's Motion for Temporary Restraining Order and a Preliminary Injunction be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).   A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.   United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated December 28, 2005.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge