IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-00138-WYD-BNB

SIREINO JOE MARTINEZ,

      Plaintiff,

v.

JOE ORTIZ, Executive Director, Colorado Department of Corrections;
GARY GOLDER, Warden, Sterling Correctional Facility;
MARY COX, (Major), Religious Programs Coordinator, Sterling Correctional Facility;
FRANK SIPES, Lieutenant (Security Officer), Sterling Correctional Facility;
MARY DISCHNER, Lieutenant (Security Officer), Sterling Correctional Facility;
SUE GRISENTI, (CIPS), Colorado Inmate Phone System Operator;
CONNIE WILLYARD, (CIPS) Colorado Inmate Phone System Operator;
      all sued in their individual and official capacities,

      Defendants.

---

**ORDER AFFIRMING AND ADOPTING
UNITED STATES MAGISTRATE JUDGE'S RECOMMENDATIONS**

---

THIS MATTER is before the Court on Plaintiff's Motion Amending Complaint

Pursuant to Deadline Date of July 5, 2005 (# 23), filed July 1, 2005, and Plaintiff's

Motion for Temporary Restraining Order and a Preliminary Injunction (# 26), filed July

13, 2005.  These motions were referred to Magistrate Judge Boland for

recommendations by Order of Reference dated March 7, 2005.  I will address each of

these motions separately below.

**I.**      <u>**PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT**</u>

Plaintiff filed a Motion Amending Complaint Pursuant to Deadline Date of July 5,

2005 (# 23) on July 1, 2005.  Magistrate Judge Boland issued a recommendation on

November 22, 2005.  He recommends that the motion be denied.  Specifically, he recommends that Plaintiff's motion be denied because the "text of the proposed amended complaint does not contain any allegations against Officer DeCesaro" that he "caused or participated in the denial of [Plaintiff's] religious rights."  Recommendation at 2, 3.

Magistrate Judge Boland advised the parties that specific written objections were due within ten (10) days after being served with a copy of the Recommendation.  *Id.* at 4.  Despite this advisement, no objections were filed by any party to the Magistrate Judge's Recommendation.  When no objections are filed, I am vested with discretion to review the Recommendation "under any standard [I] deem[] appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  Nonetheless, though not required to do so, I review the Recommendation to "satisfy [my]self that there is no clear error on the face of the record."[1]  *See* Fed. R. Civ. P. 72(b) Advisory Committee Notes.

Having reviewed the Recommendation, I am satisfied that there is no clear error on the face of the record.  I agree with Magistrate Judge Boland that Plaintiff's Motion Amending Complaint Pursuant to Deadline Date of July 5, 2005, should be denied

---

[1] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a *de novo* review, Fed. R. Civ. P. 72(b).

because Plaintiff failed to set forth specific allegations that Officer DeCesaro caused or

participated in the denial of Plaintiff's religious rights.

## II.   PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER

### A.   Introduction

Plaintiff filed a Motion for Temporary Restraining Order and a Preliminary

Injunction (# 26), Declaration in Support of Plaintiff's Motion for Temporary Restraining

Order and a Preliminary Injunction (#28) [hereinafter Pl.'s Decl.], and Memorandum of

Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction

(#29) [hereinafter Mem. of Law] on July 13, 2005.   Magistrate Judge Boland issued a

Recommendation on December 28, 2005, which is incorporated herein by reference.

*See* 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), D.C.COLO.LCIVR. 72.1.  Magistrate

Judge Boland recommends therein that the motion be denied because Plaintiff failed to

establish that he has a substantial likelihood of success on the merits, that he has

suffered irreparable injury, that his threatened injury outweighs damage the proposed

injunction may cause to others, and that the proposed injunction will not be adverse to

the public interest.  Recommendation at 1, 3, 7, 8.  On January 20, 2006, Plaintiff filed

an Objection, which I deem as timely.  This objection necessitates a *de*

*novo* determination as to those specified proposed findings or recommendations to

which objection is made since the nature of the matter is dispositive.  FED. R. CIV. P.

72(b); 28 U.S.C. § 636(b)(1).

B.    Background

Plaintiff is currently incarcerated by the Colorado Department of Corrections

(DOC) at Sterling Correctional Facility.  He claims that various DOC officials are

violating his religious rights by failing to properly protect the Oglala Lakota Nation's

traditional Sweat Lodge and Pipe Ceremonies.  Plaintiff seeks an injunction

> requiring the defendant(s) to 'STOP' all performances and participation of
> Sweatlodge/Pipe Ceremonies in all correctional facilities under the control
> and supervision of the Executive Director (Joe Ortiz) . . . per the letter of
> Chief Arvol Looking Horse 'Protection of Ceremonies' of 6-25-03, until the
> final disposition of the case and until a qualified spiritual leader or medicine
> man of the Ogalala [sic] Lakota Nation can be consulted and a preliminary
> injunction requiring the defendant(s) to carry out the plan of inforcement
> [sic].

Pl.'s Decl. at 5-6.

C.    Analysis

FED. R. CIV. P. 65(a) and (b) govern preliminary injunctions and temporary

restraining orders, respectively.  "Where the opposing party has notice, the procedure

and standards for issuance of a temporary restraining order mirror those for a

preliminary injunction."  *Emmis Comm'ns Corp. v. Media Strategies, Inc.*, 2001 WL

111229, *2 (D. Colo. 2001) (citing 11A Charles Alan Wright, Arthur Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 2951 (2d ed. 1995)); *see also Sampson v.

Murray*, 415 U.S. 61, 86 (1974).  Because Plaintiff seeks a temporary restraining order,

in addition to a preliminary injunction, and gave notice to Defendants, his motion is

analyzed under preliminary injunction standards.

A preliminary injunction is an extraordinary remedy, and, thus, a court should

only grant such relief where the moving party clearly and unequivocally establishes its

necessity.  *See United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989).  In the Tenth Circuit, a party seeking a preliminary injunction must establish four prerequisites:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citations omitted).

"Because the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held,'" three types of preliminary injunctions are disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Id.* at 1258–59 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc) [hereinafter *O Centro*]).  If a preliminary injunction fits within one of these disfavored categories, the injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.* at 1259 (citing *O Centro*, 389 F.3d at 975–96).

Status quo is defined as "the last uncontested status between the parties which preceded the controversy . . . ."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citation omitted).  "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing

status and relationships between the parties, regardless of whether the existing status and relationship may ultimately be found to be in accord or not in accord with the parties' legal rights." *Schrier*, 427 F.3d at 1259 (emphasis in the original) (citations omitted).  Plaintiff seeks a preliminary injunction that alters the status quo because the injunction would transform the parties relationship as it existed at the last uncontested point in time by changing the way sweat lodge and pipe ceremonies are conducted. Therefore, because the preliminary injunction alters the status quo, it is a disfavored injunction and must be more closely scrutinized.

> 1.    Likelihood of Success on the Merits

I first consider Plaintiff's likelihood of success on the merits.  Plaintiff does not explain why he would likely succeed on the merits but, instead, makes a conclusory statement that he "has a great likelihood of success on the merits."  Mem. of Law at 8. Plaintiff cites case law to support his assertion that a less stringent standard should be applied.  *See* Mem. of Law at 9.  However, because the preliminary injunction Plaintiff requests alters the status quo and is, thus, disfavored, Plaintiff "must make a strong showing . . . with regard to the likelihood of success on the merits . . . and may not rely on [a less stringent] modified likelihood-of-success-on-the-merits standard."  *Schrier*, 427 F.3d at 1261.  I conclude that Plaintiff failed to satisfy this prerequisite for issuing a preliminary injunction because he did not establish why he would likely succeed on the merits.

> 2.    Irreparable Injury

Plaintiff argues that his First Amendment right to freedom of religion is being

violated, and, thus, "[a]s a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm." Mem. of Law at 6. Specifically, Plaintiff alleges that

> DOC is in violation of my rights, by allowing non-natives that are convicted of child molesting, sexual assualts [sic], blood on their hands, to carry the Sacred Pipes, perform ceremonies in prison, these offenders are not Lakota, Nakota, Dakota, and are not adopted by the tribe and even worse, "do not" know how to perform our ceremonies according to our elder's [sic], these are violations that are continous [sic] and have to stop according to the letter put out to all Nations by the Ogalala [sic] Lakota Chief Arvol Looking Horse, "Protection of Ceremonies," dated 6-25-03. (See attached).
>
> These non-natives are continously [sic] violating the tobacco rule, they put the Sweatlodge tarps on the structure before the fire is even started and crawl inside and roll cigarettes to smoke, which is not part of any Lakota Ceremony, these are Lakota built sweatlodges, pipes, ceremonies and sacred songs, these are violations per Chief Arvol Looking Horse.
>
> Other Native American Tribe participants, such as Navajos, Apaches are performing other types of ceremonies in these Lakota built Sweatlodges and this is a very 'serious' violation to the Lakota Nation and our ceremonies.
>
> I am suffering 'irreparable harm' in the form of continued physical and mental suffering and increasing risk that my freedom to worship under the First Amendment, 42 U.S.C. § 2000cc and 'Protection of Ceremonies' per Chief Arvol Looking Horse, will continue to be violated.

Pl.'s Decl. at 3–4. Plaintiff further explains that "[i]f he does not receive the qualified spiritual leader and medicine man to protect these ceremonies in prison, the 'Lakota Traditional Way of Life' will be continously [sic] disrespected." *Id.* at 7.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Howard v. United*

*States*, 864 F. Supp. 1019, 1028 (D. Colo. 1994) (citing 11 Charles A. Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 2948 (1973)).  Additionally, irreparable

injury is established "when the court would be unable to grant an effective monetary

remedy after a full trial because such damages would be inadequate or difficult to

ascertain." *Dominion Video*, 269 F.3d at 1156.  While Plaintiff is permitted to exercise

his religion's ceremonies, he has demonstrated that his religious rights are infringed

upon each day that the Lakota ceremonies are conducted in violation of the tribe's

tradition.  Thus, contrary to Magistrate Judge Boland's Recommendation, I find that

Plaintiff demonstrated irreparable injury.

      3.   <u>Balance of Parties' Interests</u>

      This Court must next consider whether "the threatened injury . . . outweighs

whatever damage the proposed injunction may cause the opposing party" in

determining whether to issue an injunction.  *Schrier*, 427 F.3d at 1258.  Plaintiff asks

this Court to stop all performances and participation in Sweat Lodge and Pipe

Ceremonies until a Lakota spiritual leader or medicine man can be consulted about the

proper way to hold such ceremonies.  *See* Pl.'s Decl. at 5-6.  Additionally, he seemingly

requests that this Court exclude non-natives from participating in Lakota ceremonies

and other Native Americans, such as Navajos and Apaches, from participating in their

own religious ceremonies within the "Lakota built Sweatlodges."  Pl.'s Decl. at 3–4.

      While I acknowledge that Plaintiff is suffering irreparable harm because the

prison's current policy does not strictly adhere to the traditions surrounding Lakota

ceremonies, Defendants must consider all inmates' freedom of religion rights in

developing prison policies.  If I were to grant Plaintiff's motion for a preliminary injunction, both non-natives' and other Native Americans' freedom of religion rights may be infringed upon in violation of their First Amendment rights.  I conclude that Defendants' interest in protecting all religious freedom by continuing religious ceremonies outweighs Plaintiff's interest in forcing prison officials to strictly follow the traditions of Lakota ceremonies.  Plaintiff fails to satisfy this prerequisite for issuing a preliminary injunction.

      4.   <u>Public Interest</u>

Plaintiff must also show that "the injunction, if issued, would not be adverse to the public interest."  *Schrier*, 427 F.3d at 1258.  Plaintiff argues that "the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law."  Mem. of Law at 10.

"The First Amendment of the United States Constitution grants each citizen certain fundamental rights.  Enforcement of such rights is clearly very much in the public interest."  *Howard*, 864 F. Supp. at 1029.  While that is true, Magistrate Judge Boland pointed out that "Congress, when it enacted RLUIPA [Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 1000cc-1], made clear that the public interest is served by allowing inmates the right to practice their chosen faith. . . . [As such,] [i]t would be adverse to the public interest to deny all non-Lakota, Nakota, and Dakota inmates access to sweat lodges pending resolution of plaintiff's case."  Recommendation at 8.

While Plaintiff has a First Amendment right to practice his religion according to

tradition, other inmates have a First Amendment right to religion as well.  I conclude

that it is in the public interest to protect all of the inmates' freedom of religion, and,

therefore, it would be improper for me to issue an injunction to protect one man's

religious freedom, while curtailing others.  Plaintiff fails to satisfy this prerequisite for

issuing a preliminary injunction.  Because Plaintiff only satisfied one of the four

prerequisites for a court to issue a preliminary injunction, I deny Plaintiff's request for a

preliminary injunction.

## III.   <u>CONCLUSION</u>

Accordingly, for the reasons stated above, it is

ORDERED that the Recommendation of United States Magistrate Judge Boland,

dated November 22, 2005, is **AFFIRMED AND ADOPTED**.  In accordance therewith, it

is

FURTHER ORDERED that Plaintiff's Motion Amending Complaint Pursuant to

Deadline Date of July 5, 2005 (# 23) is **DENIED**.  It is

FURTHER ORDERED that the Recommendation of United States Magistrate

Judge Boland, dated December 28, 2005, is **AFFIRMED AND ADOPTED**.  In

accordance therewith, it is

FURTHER ORDERED that Plaintiff's Motion for Temporary Restraining Order

and a Preliminary Injunction (#26) is **DENIED**.

Dated:  March 27, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge