IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00138-WYD-BNB

SIREINO JOE MARTINEZ,

Plaintiff,

v.

JOE ORTIZ, Executive Director, Colorado Department of Corrections,
GARY GOLDER, Warden, Sterling Correctional Facility,
MARY COX, (Major) Religious Programs Coordinator, Sterling Correctional Facility,
FRANK SIPES, Lieutenant (security officer), Sterling Correctional Facility,
MARY DISCHNER, Lieutenant (Security Officer), Sterling Correctional Facility,
SUE GRISENTI, (CIPS), Colorado Inmate Phone System Coordinator, and
CONNIE WILLYARD, (CIPS) Colorado Inmate Phone System Operator,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Motion for Summary Judgment with Supporting Authority from Defendants** [Doc. # 40, filed 11/4/05] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). I cannot act as an advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all

reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Id. at 324.

## II.   BACKGROUND

The plaintiff filed his Prisoner Complaint (the "Complaint") on January 26, 2005.[1] The plaintiff asserts that he is a Native American Indian. At all times pertinent to the allegations of the Complaint, he was incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility.

The Complaint is not a model of clarity. The Complaint alleges that the defendants are guilty of numerous actions and inactions which violated the plaintiff's constitutional rights. These

---

[1] The names of the defendants in the caption of the Complaint did not match the names in the text of the Complaint. The plaintiff was ordered to cure this deficiency. *Order issued January 26, 2005*. On February 2, 2005, the plaintiff filed a supplement to the Complaint (the "Supplement") which clarifies the names of the defendants.

actions and inactions are based on the defendants' application of DOC Administrative Regulations 800-01 and 900-01 to the plaintiff's religious practices, and specifically the defendants' actions requiring that Sweatlodge and Pipe Ceremonies must have a minimum of five participants; placing limitations on the plaintiff's contact with spiritual advisors; permitting inexperienced staff to monitor Sweatlodge and Pipe Ceremonies; not allowing an area for smudging and prayer during weekdays; not allowing food offerings; permitting inspection of medicine bags; prohibiting the purchase of herbs; and requiring strip searches after every Sweatlodge Ceremony.

The plaintiff is suing the defendants in their individual and official capacities. *Supplement*, caption and fourth and fifth consecutive pages. He seeks declaratory and injunctive relief and compensatory and punitive damages. *Complaint*, thirtieth consecutive page.

### III.   ANALYSIS

#### A.   Qualified Immunity

The defendants assert that they are entitled to qualified immunity on the plaintiff's claims against them.

> Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. It is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).

The plaintiff bears a heavy two-part burden in establishing that the defendant violated clearly established law.  Teague v. Overton, 15 Fed.Appx. 597, 600 (10th Cir. 2001).  This burden must be met before the defendant bears his initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings.  When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test.  First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right.  Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue.  A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588 (10th Cir. 2000) (internal quotations and citations omitted).

The defendants assert, and the plaintiff does not dispute, that the conduct of each defendant which forms the basis of the plaintiff's claims is that they "personally participated in the alleged violations by applying the unconstitutional administrative regulations 800-01 and 900-01." *Motion*, p. 2 and Exhibit A, pp. 8-12.  For purposes of their Motion, the defendants assume *arguendo* that the plaintiff can establish the unconstitutionality of applying AR 800-01 and 900-01 to the plaintiff.  The defendants argue that the individual defendants are entitled to qualified immunity because there is no established law which declares that the application of AR 800-01 and 900-01 was unconstitutional.

The plaintiff asserts that "at the time his constitutional rights were violated, the laws governing DOC Administrative Regulations 800-01 and 900-01 were clearly established pursuant to" the First Amendment to the United States Constitution; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")); Cruz v. Beto, 405 U.S. 319 (1972);[2] and sections 17-42-101 and 102, C.R.S.  *Response*, pp. 6-7.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1.

The plaintiff in Cruz v. Beto, a Buddhist inmate confined in a Texas prison, filed a complaint wherein he alleged that the prison (1) denied Buddhist prisoners the right to hold religious services; (2) refused to disseminate the teachings of Buddha; (3) prevented the plaintiff from borrowing or lending Buddhist religious books and materials; (4) punished the plaintiff by placing him in solitary confinement on a diet of bread and water for two weeks for sharing his Buddhist religious material with other prisoners; and (5) awarded points of good merit for participation in Protestant, Jewish, and Roman Catholic religions.  405 U.S. at 320.  The Supreme Court reversed the lower courts' dismissal of the complaint.  Id. at 319.  The Court found that the plaintiff had stated a claim for violation of his First Amendment rights to free exercise of religion.

---

[2]The plaintiff incorrectly cites to Cruz v. Beto as 455 U.S. 319.

5

Id. at 322.  The Court stated "If the allegations of this complaint are assumed to be true, as they must be on the motion to dismiss, Texas has violated the First and Fourteenth Amendments." Id.

Section 17- 42-101, C.R.S., provides:

> (1) All persons who are confined to a correctional facility as defined in section 17-1-102 shall have the right to worship according to the dictates of their consciences, and such persons shall be afforded a reasonable opportunity to freely exercise their religious beliefs without fear of retaliation or discrimination for the free exercise thereof.  The practice of religion by any particular sect may not be curtailed or prohibited unless such practices threaten the reasonable security interests of the correctional facility.
>
> (2) Upon the request of any inmate, and to the extent practicable and consistent with reasonable security considerations, religious facilities shall be made available in a nondiscriminatory manner.  Services shall be held and advice and ministration given within the buildings or grounds of the correctional facility where the inmate is confined.  Attendance at any services so provided shall be voluntary.
>
> (3) The department shall permit access to objects of a religious nature where possession of such objects would not unduly burden the reasonable security interests of the correctional facility.  Prison officials shall accord appropriate respect for sacred objects.  When the reasonable security interests of the correctional facility necessitate the inspection of any sacred object, such inspection shall be done visually.
>
> (4) In order to provide for and attend to the spiritual needs of inmates, the department shall permit inmates to consult with and receive spiritual advice and ministration from a spiritual leader.
>
> (5) This section shall not require the department of corrections to construct additional facilities, remodel or reconfigure existing structures, or hire additional employees to meet the directives of this section.

Section 17- 42-102, C.R.S., provides in pertinent part:

> (1) The general assembly hereby finds, determines, and declares that American Indian religions and religious beliefs pre-date the creation of the United States constitution; however, understanding of and respect for American Indian religious practices is not widespread among non-indigenous persons. The general assembly further finds that serious problems in the practice of religious freedom persist for the American Indian and particularly for American Indians who are incarcerated. Therefore, in order to protect this most basic freedom for American Indians who are incarcerated, traditional religious and ceremonial practices of American Indians should be permitted in correctional facilities to the extent that such practices do not impinge on the reasonable security interests of the correctional facilities to which such Indians are confined.
>
> (2) American Indians who are confined to a correctional facility as defined in section 17-1-102 and who practice an American Indian religion as defined in subsection (5) of this section shall have access on a regular basis to the following:
>
>> (a) American Indian traditional spiritual leaders;
>>
>> (b) Items and materials utilized in religious ceremonies; and
>>
>> (c) American Indian religious facilities.
>>
>> (3) Access of American Indians to spiritual leaders, religious items and materials, and religious facilities shall be comparable to access to clergy, religious items and materials, and religious facilities which is afforded to inmates who practice Judeo-Christian religions.
>>
>> (4) The provisions of this section shall not be construed as requiring prison authorities to permit or prohibit access to peyote or American Indian religious sites.

Although these authorities broadly mandate the protection of an inmate's right to free exercise of religion, they do not address the specific violations alleged by the plaintiff concerning

the number of participants and the nature of the supervision of Sweatlodge and Pipe Ceremonies; access to spiritual advisors; smudging and weekday prayer; food offerings; inspection of medicine bags; purchasing herbs; strip searches after Sweatlodge Ceremonies; and the like. See p.3 supra. Therefore, the authorities cited by the plaintiff do not demonstrate that the rights alleged here were clearly established at the time of the defendants' conduct.

The plaintiff argues that "[s]ome courts have held that officials who where [sic] exceeding their discretion were not entitled to immunity"; qualified immunity is not available where officials fail to "use common sense in assessing their legal obligations"; "if an infringement of rights is extreme, sweeping, or obvious, those responsible for it are not immune even if there is no prior factually similar case"; and "if the defendant offer no reasonable correctional justification for their conduct, the lack of a prior 'case [on] point' will not make them immune." *Supplement*, pp. 22-25. These arguments, and the cases cited by the plaintiff in support of the arguments, rely on the fact that the officials' conduct blatantly exceeded the bounds of reason. The conduct alleged in this case does not rise to such an extreme level.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendants in their individual capacities on the basis of qualified immunity.

### B.  Official Capacity Claims

The plaintiff correctly states that the defendants are protected by qualified immunity only to the extent they are sued in their individual capacities. *Response*, p. 6. Qualified immunity does not protect the defendants to the extent they are sued in their official capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

The defendants assert that the plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. *Reply in Support of Motion for Summary Judgment with Supporting Authority from Defendants*, filed December 13, 2005. The Eleventh Amendment bars federal courts from hearing suits against an unconsenting state when brought by the state's own citizens as well as citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).

Claims against state officials in their official capacities represent only another way of bringing claims against the state. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The DOC is an agency or subdivision of the State of Colorado. Consequently, a suit against the defendants in their official capacities is a suit against the state.

Eleventh Amendment immunity was not abrogated by Congress' enactment of 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979). Accordingly, neither states nor officials acting in their official capacities are "persons" within the meaning of section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

The Eleventh Amendment bars the Court from hearing the plaintiff's section 1983 claims for money damages against the defendants in their official capacities. Pennhurst, 465 U.S at 106. The Eleventh Amendment does not bar claims for prospective injunctive relief in order to end a continuing violation of federal law. Ex parte Young, 209 U.S. 123 (1908).

The plaintiff makes the following request for prospective injunctive relief:

9

>Issue a Declaratory Judgement and Injunction ordering the defendants to STOP all violations of Native American Religious Rights, correct and consult the Lakota Tribe and Chief on the Traditional Way of Life and culture pertaining to the Sweatlodges and Pipe Ceremonies in the Colorado Prison Setting / and or remove all Sweatlodges/ Pipes (Sacred) from them. (Colorado Prisons).

*Complaint*, thirtieth consecutive page.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of the defendants in their official capacities for money damages. I further RECOMMEND that the Motion be DENIED to the extent it seeks summary judgment in favor of the defendants in their official capacities for prospective injunctive relief.[3]

### C.  Physical Injury

The defendants assert that the plaintiff's claims for damages must be dismissed because the plaintiff has failed to allege physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). The PLRA provides in pertinent part:

>No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

---

[3]I note that the plaintiff has been transferred from the Sterling Correctional Facility to the Buena Vista Correctional Complex and that requests for injunctive relief are often rendered moot upon an inmate's transfer to a different facility. However, because the plaintiff's request for injunctive relief is directed at the DOC's policy regarding Native American religious rights, and not at a policy that is specific to the Sterling Correctional facility, the request is not moot. See Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (stating that if the entry of the requested injunction would have no effect on the defendant's behavior, the plaintiff's requests for injunctive relief must be denied).

42 U.S.C. § 1997e(e).[4]

Section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury; it does not bar recovery of punitive damages or declaratory or injunctive relief. <u>Id.</u>, at 881; <u>Perkins v. Kansas Dept. of Corrections</u>, 165 F.3d 803, 808 (10th Cir. 1999). As discussed above, the plaintiff's claims remain only to the extent they seek prospective injunctive relief as against the defendants in their official capacities. Therefore, the defendants' request for dismissal of damages claims pursuant to the PLRA is moot.

## IV. CONCLUSION

I respectfully RECOMMEND that the defendants' Motion for Summary Judgment with Supporting Authority from Defendants be GRANTED IN PART and DENIED IN PART as follows:

GRANTED to the extent it seeks summary judgment in favor of the defendants in their individual capacities and in their official capacities for money damages; and

DENIED to the extent it seeks summary judgment in favor of the defendants in their official capacities for prospective injunctive relief.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.

---

[4] The plaintiff argues that the PLRA's physical injury requirement does not apply to him because he is not proceeding *in forma pauperis* in this action. *Response*, p. 8; *Supplement* [sic] *Response to Defendants' Reply for Summary Judgement with Supporting Authority from Plaintiff* (the "Supplemental Response"). This argument is frivolous. The language of the statute does not limit its reach to prisoners proceeding *in forma pauperis*.

11

R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 26, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge